1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA TOVAR, on behalf of herself and others similarly situated,<br><br>                                         Plaintiff,<br><br>v.<br><br>GC SERVICES LIMITED PARTNERSHIP; and DOES 1 to 100, inclusive,<br><br>                                         Defendants. | Case No.:  3:21-CV-1597-CAB-BGS<br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 8] |

     This matter comes before the Court on Defendant GC Services Limited Partnership's ("Defendant") motion for an order compelling arbitration and dismissing or staying this action.  [Doc. No. 8.]  The motion has been fully briefed and the Court deems it suitable for determination on the papers submitted and without oral argument.  *See* CivLR 7.1(d)(1). For the reasons set forth below, the motion to compel arbitration is **GRANTED**.

## I.      Background

     Plaintiff Sheila Tovar ("Plaintiff") was employed by Defendant in California as an hourly non-exempt employee from about August 3, 2015 until April 28, 2021.  [Doc. No. 1-2 ¶ 4.]  Plaintiff claims that during her employment, Defendant failed to pay her all wages and provide all meal and rest periods required under California law.  [*Id.*  ¶¶ 13-33.]

1

Plaintiff also alleges that Defendant failed to indemnify her for losses and expenditures incurred as part of her employment. [*Id.* ¶¶ 34-39.] Finally, Plaintiff claims that Defendant failed to timely pay her earned wages both during and after her employment and failed to provide her with accurate wage statements. [*Id.* ¶¶ 40-46.]

In her declaration, Plaintiff attests that while at work on December 15, 2015, her manager required her to log onto a platform called Peoplesoft and sign a document titled "Mutual Agreement for Dispute Resolution" (the "Agreement") by the end of the day. [Doc. No. 11 ¶ 4.] Plaintiff contends that she felt pressured to sign the document and return to work as quickly as possible, so she electronically signed after briefly reviewing it but not fully understanding its terms. [*Id.*] Plaintiff claims she was again presented with the same, albeit slightly modified, document in September 2020 and instructed by her manager to electronically sign it under similar circumstances. [*Id.* ¶ 6.] Plaintiff electronically signed the second version of the Agreement on September 25, 2020. [*Id.* ¶ 5.]

On July 1, 2021, Plaintiff filed a putative class action complaint against Defendant in state court alleging various violations of California's Labor Code and Unfair Competition Law. [Doc. No. 1-2.] Defendant removed the matter to this Court on September 10, 2021 based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). [Doc. No. 1.]

On October 18, 2021, Defendant filed a motion to compel arbitration on an individual basis and dismiss Plaintiff's class action complaint, or alternatively stay the action pending arbitration. [Doc. No. 8.] Defendant contends that the Agreement, signed by Plaintiff on December 15, 2015 and (as modified) on September 25, 2020 [Doc. No. 8-1 at 9-10, 13-15], encompasses the present dispute and therefore, the parties should be compelled to arbitration. Defendant also contends that the Agreement delegates threshold questions of arbitrability to an arbitrator. [Doc. No. 8 at 10-11.] Thus, Defendant argues that the arbitrator should determine whether Plaintiff's claims are subject to arbitration in the first instance. [*Id.*] The motion is now fully briefed and ripe for resolution.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving commerce.  *See* 9 U.S.C. § 1 *et seq.*  The FAA makes such written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotation marks and citation omitted).

Under the FAA, an aggrieved party to a written arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  Upon such a showing, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  The scope of an arbitration clause must be interpreted liberally, and "as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Accordingly, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

## III.    Analysis

Defendant contends that the present dispute is encompassed by the Agreement

between the parties, which Plaintiff signed on December 15, 2015 and again (as a slightly modified version) on September 25, 2020.  [Doc. No. 8-1 at 9-10, 13-15.]  The September 2020 version of the Agreement states in relevant part:

> **1(A). Disputes Must be Arbitrated.** . . . [A]ll disputes, claims, or complaints that involve legally protected rights ("Claims") that you have now or may have in the future against the Company, or that the Company has now or at any time in the future may have against you, arising out of and/or directly or indirectly related to your application for employment with the Company, and/or your employment with the Company, and/or the terms and conditions of your employment with the Company, and/or the termination of your employment with the Company (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement and will be resolved by arbitration and NOT by a court or jury. Covered Claims include, but are not limited to, any dispute about the formation, scope, interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement, claims relating to breach of contract, tort claims, wrongful discharge claims, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, claims under the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS. This Agreement to arbitrate applies to all Covered Claims, including any Covered Claims based on, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before you and the Company entered into this Agreement.

[*Id.* at 13.]  Defendant contends that the Court should enforce the Agreement, including

the "delegation provision" delegating the determination of arbitrability to an arbitrator, and compel Plaintiff to individually arbitrate her claims.  Plaintiff counters that the Agreement, including the delegation provision, is unconscionable under California law and therefore unenforceable.

### A.   Threshold Question of Arbitrability

"The question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis in original) (internal quotations omitted). Defendant contends that Paragraph 1(A) above contains a "clear and unmistakable delegation clause that requires an arbitrator to decide the threshold issue of the enforceability of the [Agreement] and to ultimately decide any disputes Plaintiff raises regarding enforceability."  [Doc. No. 8 at 11.]  Specifically, Defendant relies on the language stating that "Covered Claims" subject to arbitration include "any dispute about the formation, scope, interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement."  [Doc. No. 8-1 at 13.]  Plaintiff argues that the delegation clause is procedurally and substantively unconscionable under California law and thus is not enforceable.

To successfully challenge a delegation clause, a party must challenge the specific language delegating the arbitrability question to an arbitrator, rather than the entire arbitration agreement.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *see also Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021) ("Where a delegation provision exists, courts first must focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole.").  The party must show that the delegation clause is itself unenforceable under some general principle of contract law, such as fraud, duress, or unconscionability.  *See* 9 U.S.C. § 2; *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).  When analyzing the validity of a challenged provision, federal courts "apply ordinary state-law principles that govern the formation of

contracts." *Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (internal citations omitted).

California law[1] expressly states that a court may refuse to enforce a contract (or a portion thereof) that was unconscionable at the time it was made. CAL. CIV. CODE § 1670.5(a); *see also Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 73 (2018) (holding that a contract is "unlawful, and therefore unenforceable, if it is contrary to an express provision of law or contrary to the policy of express law"). To establish unconscionability, the party opposing enforcement of the contract must demonstrate procedural and substantive unconscionability, although both need not be present in the same degree. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citing *Poublon*, 846 F.3d at 1260). Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1.  Procedural Unconscionability

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power," which often results in "no real negotiation and an absence of

---

[1] The Agreement contains a Texas choice of law provision for "any dispute [that] requires the application of state law," but both parties cite to California law for their unconscionability analysis as to the delegation clause. [Doc. No. 8 at 14; Doc. No. 10 at 12.] Nevertheless, the Court finds that California's choice of law framework results in applying California law to this dispute.

When analyzing state law issues, federal courts apply the choice of law rules of the forum state. *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In this case, California's choice of law framework requires the Court to ask: (1) whether Texas has a substantial relationship to the parties or their transaction; (2) whether applying Texas law is contrary to a fundamental policy of California; and (3) whether California has a materially greater interest than Texas in resolution of the issue. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012). Although Defendant has its principal place of business in Texas [Doc. No. 1 ¶ 10], California has a materially greater interest in this matter because Plaintiff was employed by Defendant in California, is a California resident, and signed the Agreement in California. As discussed below, applying Texas law would conflict with California Labor Code § 925, which evinces a fundamental California policy prohibiting employers from requiring California employees to agree to litigate in a different forum as a prerequisite to employment. *See Ryze Claim Sols. LLC v. Superior Ct.*, 245 Cal. Rptr. 3d 575, 579 (2019). Accordingly, the Court applies California law in analyzing the enforceability of the delegation clause.

meaningful choice." *Id.* (citing *Poublon*, 846 F.3d at 1260).  Oppression can be established by showing that the contract was one of adhesion, or from the totality of the circumstances surrounding the contract's negotiation and formation.  *Id.*  Surprise may arise when the party with less bargaining power is not told about an unusual or significant provision, or the party is "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *Poublon*, 846 F.3d at 1261 n.2.  Plaintiff argues that the delegation clause is oppressive because it was presented to her in a preprinted contract of adhesion, which she could not negotiate and was required to sign to continue her employment.  [Doc. No. 10 at 15.]  Plaintiff also contends that the surprise element is met because the delegation clause is "buried within other sections of the [Agreement]" with no requirement that she separately acknowledge it.  [*Id.*]

Plaintiff has established that the Agreement (and the delegation clause therein) constitutes a contract of adhesion because it was drafted and presented by Defendant, the party with superior bargaining power, on a take-it-or-leave-it basis.  *See Lim*, 8 F.4th at 1000.  The preprinted Agreement was presented to Plaintiff on the day it was to be signed as a condition of continued employment and she was unable to negotiate the terms.  While "a contract of adhesion is not per se unconscionable," *id.*, such circumstances generally establish a "minimal degree of procedural unconscionability such that closer scrutiny of the agreement's overall fairness is required." *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 68 (2020) (internal citations omitted).

Plaintiff has not established that the delegation clause otherwise involved any undue oppression or surprise.  Both versions of the Agreement, which specifically relates to arbitration/dispute resolution, are no more than a few pages in length and have twelve clearly numbered paragraphs with bold headers indicating their content.  [Doc. No. 8-1 at 9-10, 13-15.]  The delegation clause appears in the first numbered paragraph in legible font. *Cf. Lim*, 8 F.4th at 1001 (finding unfair surprise where the delegation clause was contained "in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font").  Moreover, Plaintiff reviewed and signed nearly identical versions of the

7

standalone document on two separate occasions. *Cf. Swain*, 57 Cal. App. 5th at 69 (finding unfair surprise where the arbitration agreement was buried among various forms that the plaintiff was given little time to review). The drafter of the document is under no obligation to specifically bring an arbitration or delegation clause to the signing party's attention. *See Lim*, 8 F.4th at 1001.

Plaintiff has demonstrated a low degree of procedural unconscionability based on the delegation clause's adhesive nature. Thus, Plaintiff must demonstrate a significant degree of substantive unconscionability to succeed on her challenge to the clause.

### 2.   Substantive Unconscionability

The substantive unconscionability element focuses on the overall fairness of a contract's terms, including whether the terms are "unreasonably favorable to the more powerful party" or are "overly harsh, unduly oppressive, or unfairly one-sided." *Lim*, 8 F.4th at 1002. Plaintiff claims that the delegation clause is substantively unconscionable because if the arbitrator were to determine arbitrability, the Agreement's choice of law provision[2] would require the arbitrator to apply Texas law[3] in allocating arbitration fees (including those stemming from the arbitrator's determination of arbitrability) upon a final award. [Doc. No. 10 at 17.] Plaintiff contends that applying Texas law would put her at risk of incurring greater costs through arbitration than she would bear in court, which California law[4] prohibits. [*Id.* at 16-17.] Therefore, Plaintiff argues that if the arbitrator

---

[2] The third paragraph of the Agreement contains a choice of law provision that states that Texas law shall apply to any dispute requiring the application of state law. [Doc. No. 8-1 at 14.]

[3] Under Texas law, arbitration fee-splitting provisions are not per se unconscionable; rather, the party opposing arbitration must show some evidence that due to the fee-splitting provision, the "complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *In re Poly-America, L.P.*, 262 S.W.3d 337, 356 (Tex. 2008).

[4] Under California law, an arbitration agreement between an employer and employee is unconscionable if it would "require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110-11 (2000) (emphasis in original); *see also Lim*, 8 F.4th at 1004 ("[I]mposing arbitration expenses on an employee that he would not otherwise bear in federal court is unconscionable [under California law] regardless of his ability to pay.").

were to apply Texas law in its proceedings, she would be deprived of the protections of California law regarding fee-shifting arrangements in arbitration, thereby making the delegation clause substantively unconscionable.

Defendant argues that California Labor Code § 925 is dispositive in this matter. Section 925 provides, in its entirety:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> > (1) Require the employee to adjudicate outside of California a claim arising in California.
> >
> > (2) **Deprive the employee of the substantive protection of California law with respect to a controversy arising in California**.
>
> (b) Any provision of a contract that violates subdivision (a) is **voidable by the employee**, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and **California law shall govern the dispute**.
>
> (c) In addition to injunctive relief and any other remedies available, a court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.
>
> (d) For purposes of this section, **adjudication includes litigation and arbitration**.
>
> (e) This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied.
>
> (f) This section shall apply to a contract entered into, modified, or extended on or after January 1, 2017.[5]

CAL. LAB. CODE § 925 (emphasis added).  Because Plaintiff primarily resided and worked for Defendant in California, Defendant contends that § 925(a) prohibits it from requiring Plaintiff to agree, as a condition of her employment, to a provision that would deprive her

---

[5] Because the December 15, 2015 and the September 25, 2020 versions of the Agreement are nearly identical and have the same Document ID number ("Doc ID 00000075"), and the later version is labeled as "Version 2.00," the Court finds that the Agreement was modified and/or extended after January 1, 2017. [Doc. No. 8-1 at 9-10, 13-15.]

of the substantive protection of California law.  If the choice of law provision deprives Plaintiff of the substantive protection of California law in this dispute as she claims, Defendant argues that § 925(b) renders that provision "voidable by the employee."  [Doc. No. 14 at 5.]  Thus, Plaintiff may choose to void the choice of law provision and have California law govern the parties' arbitration proceedings, including the arbitrator's allocation of fees upon a final award.

The Court agrees with Defendant's analysis.  Nothing in the Agreement purports to deprive Plaintiff of her statutory right under § 925(b) to unilaterally void the Texas choice of law provision if it deprives her of the substantive protection of California law.  This renders Plaintiff's only substantive unconscionability objection to the delegation clause (based on its interaction with the choice of law provision) moot.  Moreover, if the Agreement's choice of law provision violates § 925(a), the provision is unenforceable under California law even if Plaintiff does not unilaterally void it.  *See Sheppard, Mullin*, 6 Cal. 5th at 73 (holding that a contractual provision is unenforceable "if it is contrary to an express provision of law or contrary to the policy of express law").

California Civil Code § 1670.5 provides that if a court finds that any clause of a contract was unconscionable at the time it was made, it may enforce the remainder of the contract without the unconscionable clause.  CAL. CIV. CODE § 1670.5(a).  The California Supreme Court has interpreted this section to mean that "if a trial court concludes that an arbitration agreement contains unconscionable terms, it then must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated."  *Lange v. Monster Energy Co.*, 260 Cal. Rptr. 3d 35, 48 (2020) (internal quotation marks and citation omitted).  "The strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement," unless the entire agreement is "permeated by unconscionability."  *Id.*  The Court does not find that the Agreement is permeated by unconscionability, and Plaintiff may present any other arguments as to the Agreement's unconscionability to the arbitrator when determining the arbitrability of this dispute.  The Agreement also contains a severance clause providing that

if any term or provision therein is "held to be illegal, invalid, or unenforceable," and cannot be reformed to be legal, valid, and enforceable, "then said term or provision shall be deleted from the Agreement and the remaining terms and provisions shall remain in full force and effect." [Doc. No. 8-1 at 15.] Thus, severing the choice of law provision from the Agreement pursuant to California Civil Code § 1670.5(a) is appropriate.

Without the problematic choice of law provision, Plaintiff's unconscionability defense to enforcement of the delegation clause fails. The Court finds that the delegation clause contained in the Agreement constitutes "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Accordingly, the Court will compel the parties to arbitrate the threshold issue of whether Plaintiff's claims are subject to arbitration under the Agreement.

## IV.    Conclusion

Defendant's motion to compel arbitration [Doc. No. 8] is hereby **GRANTED**. The Court severs the choice of law provision from the Agreement as discussed above. The Court **ORDERS** the parties to proceed to arbitration in California in the manner provided for in the Agreement. *See* 9 U.S.C. § 4.

In addition, the Court hereby **STAYS** this action and directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. *See id.* § 3. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

It is **SO ORDERED**.

Dated:  December 17, 2021

Hon. Cathy Ann Bencivengo
United States District Judge

11

21-CV-1597-CAB-BGS